FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 JUL 24

U.S. DISTRICT COURT
N.D. OF ALABAM

DAVID LARRY NELSON,          )

         Petitioner,      )

v.                  ) CIVIL ACTION NO. 97-PT-0925-S

STATE OF ALABAMA,       )

         Respondents.    )

**ENTERED**

JUL 24 2000

MEMORANDUM OF OPINION

Procedural History

       David Larry Nelson, hereinafter referred to as petitioner, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted on March 18, 1982 of "murder committed by a defendant who has been previously convicted of murder in the first or second degree in the 20 years preceding the crime." Section 13-11-2(a)(13), *Code of Alabama, 1975*.[2] Petitioner was sentenced to death in the Jefferson County Circuit Court on April 2, 1982. His conviction and death sentence were affirmed by the Court of Criminal Appeals, *Nelson v. State*, 511 So.2d 225 (Ala. Cr. App. 1986), and by the Alabama Supreme Court, *Ex Parte Nelson*, 511 So.2d 248 (Ala. 1987).

       Petitioner subsequently filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Alabama which was denied as to his conviction but

---

[1]    Petitioner was represented by Michael McIntyre who, subsequent to filing the original petition, was appointed to represent petitioner in this proceeding. (Document #6).

[2]    Petitioner was first tried for this offense in October of 1978, found guilty by jury verdict, and sentenced to death by the trial court. On appeal his case was reversed and remanded back to the circuit court by the Alabama Court of Criminal Appeals on the mandate of *Beck v. Alabama*, 447 U.S. 625 (1980), *on remand*, 396 So.2d 645 (Ala. 1980), and *Ritter v. State*, 403 So.2d 154 (Ala. 1981). *Nelson v. State*, 405 So.2d 50 (Ala. Cr. App. 1981).

51

granted as to his death sentence. *Nelson v. Nagle*, No. CR 90-PT-2653-S (N.D. Ala. August 19, 1991). This court found reversible error in the prosecutor's sentencing stage closing argument. On appeal to the Eleventh Circuit Court of Appeals, this court was affirmed on July 8, 1993. *Nelson v. Nagle*, 995 F.2d 1549 (11th Cir. 1993).

Petitioner's case was presented to a jury for re-sentencing on February 14 through 16, 1994 and the jury returned a sentencing recommendation of death. Petitioner was subsequently sentenced to death by the circuit court judge on February 16, 1994.

On August 18, 1994 the Alabama Court of Criminal Appeals remanded petitioner's case to the trial court in order for that court to hold a new sentencing hearing and to issue a sentencing order which complied with Section 13A-5-47 of the *Code of Alabama. Nelson v. State*, 681 So.2d 252, 256-257 (Ala. Cr. App. 1995).[3] On October 23, 1995 the trial court conducted a new sentencing hearing. A final sentencing order was issued by the trial court on March 14, 1996. The Alabama Court of Criminal Appeals affirmed petitioner's sentence of death on April 19, 1996. *Nelson v. State*, 681 So.2d 257 (Ala. Cr. App. 1996). The Alabama Supreme Court affirmed petitioner's death sentence, after reviewing the record for plain error and reviewing the propriety of petitioner's death sentence. *Ex Parte Nelson*, 681 So.2d 260, 262 (Ala. 1996).[4]

On September 9, 1996 the state filed a Motion to Set Execution Date in the Alabama Supreme Court. On October 23, 1996 that court set a December 6, 1996 execution date for petitioner. The Alabama Supreme Court, however, granted petitioner a temporary stay on December 5, 1996 on the grounds that petitioner's brother was critically ill and in need of a kidney transplant.

---

[3] The case was remanded to the trial court for a sentencing hearing before the trial judge but not before a jury.

[4] The Alabama Supreme Court reviewed petitioner's death sentence without briefing from petitioner or any advocacy on his behalf.

Petitioner had indicated a desire to donate one of his kidneys to his brother prior to being executed. The Alabama Supreme Court granted the stay based on a physician's affidavit that indicated a determination could be made within approximately 90 days as to whether the transplant was feasible.

The Alabama Supreme Court ordered that petitioner report to the court within twenty-one days of the date of the order "as to whether or not there is a kidney 'match' and, if there is no determination that there is a kidney 'match' between [petitioner] and [his brother] within twenty-one days of the date of this order, this court will, upon motion of the Attorney General, set an execution date." On December 24, 1996 petitioner filed a Motion to Continue Stay of Execution in response to the Alabama Supreme Court's December 5, 1996 order. In that motion petitioner represented to the Alabama Supreme Court, and provided the court with affidavits to support those representations, that results of testing indicated that there was a match between petitioner and his brother and that the brothers were compatible for organ transplantation. Petitioner also requested that the Alabama Supreme Court continue its stay of the execution date for an additional one hundred twenty days so that a transplant could be completed.

On January 15, 1997 the Alabama Supreme Court entered an order granting Nelson's motion to continue the stay of execution pending further orders of the court "conditioned upon the filing by [petitioner] of a complete physician's report within twenty-eight days of this order." The Alabama Supreme Court specified the information that was to be included in the physician's report.

On February 12, 1997 petitioner filed a second Motion to Continue Stay of Execution in response to the Alabama Supreme Court's January 15, 1997 order. In that motion petitioner provided the court with some, but not all, of the information the Alabama Supreme Court required.

3

Petitioner admitted in his motion that his brother was too ill to receive a kidney transplant; however, he requested that his execution date be delayed an additional sixty days.

On February 25, 1997 the State filed a Motion to Lift Temporary Stay of Execution and to Reset Execution Date. On March 14, 1997 the Alabama Supreme Court then set an April 18, 1997 execution date. On April 8, 1997 petitioner filed a motion to stay his execution date in the Alabama Supreme Court requesting a stay of his execution based on counsel's representations that he planned to file a Rule 32 petition attacking petitioner's death sentence in the Jefferson County Circuit Court. The state filed the State's Response in Opposition to the Motion for Stay of Execution in the Alabama Supreme Court on April 9, 1997 urging the court to deny the stay request because petitioner had not filed his proposed Rule 32 petition in the state trial court and on the grounds that, even if he had filed the Rule 32 petition, the petition was due to be dismissed because all of petitioner's claims were procedurally defaulted pursuant to Rule 32.2(a) of the *Alabama Rules of Criminal Procedure*.

On April 14, 1997 the Supreme Court of Alabama denied the Motion for Stay of Execution. On April 14, 1997 petitioner filed a Motion for Stay of Execution and a Petition for Writ of Habeas Corpus in this court challenging his 1996 death sentence as illegally imposed and unconstitutional. Respondent did not oppose the motion.[5]

This court granted the Motion for Stay and subsequently allowed petitioner to amend his petition.

---

[5]        Petitioner's original habeas corpus petition filed in this action raised claims attacking his 1994 resentencing proceedings which have never been the subject of a federal habeas corpus petition filed by petitioner. For that reason, the state did not oppose a stay of execution and it represented its position to this court in the State's Response to Motion for Stay of Execution and Supporting Memorandum of Law filed on April 15, 1997.

Issues

Petitioner presents twenty-three claims in his amended petition–all of which are based on alleged violations of the Fifth, Sixth, Eighth and Fourteenth Amendments:

I.      Petitioner was denied his right to counsel when there was no record that the trial court ever conducted an adequate hearing concerning petitioner's waiver of counsel.

II.     Petitioner was denied his right to counsel when the trial court failed to appoint counsel prior to allowing petitioner to waive counsel.

III.    Petitioner was denied his right to the effective assistance of counsel when the trial court appointed stand-by counsel who lacked knowledge concerning their role at the petitioner's sentencing hearing.

IV.     Petitioner was denied his right to the effective assistance of counsel at his sentencing where stand-by counsel failed to conduct any meaningful investigation, failed to discover available mitigating evidence and evidence to rebut the aggravating circumstances and failed to protect petitioner's rights during jury selection.

V.      The failure of the Alabama appellate courts to appoint counsel for the petitioner on his direct appeal violated petitioner's right to counsel.

VI.     Petitioner was denied his right to present mitigating evidence during his sentencing hearing.

VII.    Petitioner was denied his right to a fair sentencing by the trial court's failure to consider evidence concerning the circumstances of petitioner's involvement in the charged offense as a mitigating factor.

VIII.   The trial court denied petitioner's right to present and have a jury consider non-statutory mitigating evidence when the court informed the jury that petitioner's 1974 second degree

murder conviction and the murder conviction in the instance case were "facts" that had already been proved.

IX.     The trial court denied petitioner a fair sentencing determination when it informed the jury that the previous jury had recommended a sentence of death.

X.      Petitioner was sentenced to death based on an aggravating factor which was not established at his sentencing hearing and the double counting of another aggravating factor.[6]

XI.     Petitioner was denied his right to due process of law by the misconduct of the prosecution during petitioner's sentencing proceedings.[7]

XII.    Petitioner's right to a fair sentencing hearing was violated by the trial court's jury instructions concerning aggravating circumstances, mitigating circumstances, and reasonable doubt and the vote required to support the jury's advisory sentence.

XIII.   Petitioner was denied his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution when the state failed to provide petitioner with impeaching or exculpatory evidence involving the prosecution witness, Linda Vice, evidence rebutting any bad acts relied upon by the State in seeking the death penalty and mitigating evidence concerning petitioner's character or petitioner's involvement in the charged offense.

---

[6]     The prosecutor announced at the beginning of the sentencing proceeding that he was not pursuing as an aggravating factor that the petitioner had committed that murder in the course of a robbery. The aggravating factor that petitioner had previously been convicted of another capital offense or a felony involving the use of or violence to the person was petitioner's 1974 conviction of second degree murder which was also used in the indictment of the instant case to make the petitioner's case a capital case.

[7]     The misconduct alleged is the prosecutor's failure to give notice prior to the sentencing hearing of the aggravating factors that he intended to rely upon in seeking the death penalty and the prosecutor's silence when the trial court found as an aggravating factor that the petitioner had committed the murder in the course of a robbery even though the prosecutor did not pursue this as an aggravating factor.

XIV.  Petitioner was denied his right to a fair sentence hearing when the trial court did not sequester the sentencing jury after its selection and failed to obtain a knowing and intelligent waiver of this right from the petitioner.

XV.   Petitioner was denied his constitutional rights when the trial court refused petitioner's request for individual voir dire and sequestered voir dire.

XVI.  Petitioner was denied his constitutional rights when the trial judge failed to recuse himself after concluding at a prior Rule 20 proceeding that there was "overwhelming evidence of petitioner's guilt" and further stressed his familiarity with petitioner and the case at re-sentencing.

XVII. Petitioner was denied his right to a fair appellate review based upon a complete record when the trial court failed to make written findings summarizing the crime and petitioner's role in the crime.[8]

XVIII. Petitioner was denied his constitutional rights when the Alabama appellate courts, in independently weighing the aggravating and mitigating factors, found as an aggravating factor a robbery attempt for which no evidence was presented.

XIX.  Petitioner was denied his right to a fair sentencing hearing when he was sentenced to death as a result of passion, prejudice and other arbitrary factors based upon the make up and experiences of the jury.

XX.   Petitioner was denied a fair sentencing hearing when he received a sentence that was excessive and disproportionate to similar cases.

---

[8] Rather than remanding for written findings, the appellate court instead relied upon findings dictated by the trial court into the record at the October 23, 1995 sentencing hearing.

XXI.  Petitioner was denied his constitutional rights in that the death penalty in Alabama is
unconstitutional on its face and as applied in petitioner's case.

XXII.  Petitioner's right to have his death penalty case reviewed on a complete and accurate record
has been denied.

XXIII. Petitioner was denied his constitutional rights based on the cumulative effective of all errors
in petitioner's case which makes petitioner's sentence of death unreliable.


Procedural Default

Respondent argues that all of petitioner's claims are procedurally defaulted either
because petitioner failed to raise the claims at trial, on direct appeal, or in a state post-conviction
proceeding or because petitioner failed to raise the claims on direct appeal or in a state post-
conviction proceeding.[9]

In *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) the
Supreme Court held that "a procedural default does not bar consideration of a federal claim on either
direct or habeas review unless the last state court rendering a judgment in the case 'clearly and
expressly' states that its judgment rests on a state procedural bar."

In *Teague v. Lane*, 489 U.S. 288, 299, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the
court held that *Harris* is inapplicable "where the claim was never presented to the state courts."
Claims that have never been raised in state court are now procedurally barred from consideration
in Alabama courts because Alabama law precludes state collateral review of issues that could have

---

[9]     Respondent apparently concedes that claims X, XV, and XVIII were raised at trial but not on direct appeal or
in a state post-conviction proceeding.  Respondent argues that the remaining claims were not raised in state
court at all.

8

been but were not raised at trial, Rule 32.2(a)(3), or that could have been but were not raised on

appeal. Rule 32.2(a)(5), A.R.Cr.P. Claims that have never been raised in state court are also barred

from federal habeas consideration absent a showing of cause for the default and actual prejudice

from the alleged constitutional claim. *Wainwright v. Sykes*, 433 U.S. 72, 89-91, 97 S.Ct. 2497, 2508,

53 L.Ed.2d 594 (1977); *Teague, supra*; *Snowden v. Singletary*, 135 F.3d 732, 735 n.3 (11th Cir.),

*cert. denied,* 525 U.S. 963, 1119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

      In *Kennedy v. Hopper*, 156 F.3d 1143, 1145 (11th Cir. 1998), *cert. denied,* ___ U.S.

___, 119 S.Ct. 1475, 143 L.Ed.2d 559 (1999), the Eleventh Circuit Court of Appeals rejected the

petitioner's argument that claims which were alluded to during the state trial and incorporated as

issues on appeal by way of the adverse ruling list were not procedurally defaulted:

> "In all cases in which a state prisoner has defaulted
> his federal claims in state court pursuant to an
> independent and adequate state procedural rule,
> federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of
> federal law...." *Coleman v. Thompson*, 501 U.S. 722,
> 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).
> "[I]f the petitioner failed to exhaust state remedies
> and the court to which the petitioner would be
> required to present his claims in order to meet the
> exhaustion requirement would now find the claims in
> order to meet the exhaustion requirement would now
> find the claims procedurally barred[,] ... there is a
> procedural default for purposes of federal habeas ...,"
> *Id*. at 735 n.1, 111 S.Ct. at 2557 n.1; *see Teague v.
> Lane*, 489 U.S. 288, 297-99, 109 S.Ct. 1060, 1068-69,
> 103 L.Ed.2d 334 (1989) (analyzing Illinois law to
> determine whether a claim was defaulted under
> Illinois law when the claim was not raised in the
> Illinois courts); *Chambers v. Thompson*, 150 F.3d
> 1324, 1326-27 (11th Cir. 1998); *Kennedy I*, 54 F.3d at
> 684. **In capital cases – as in all criminal cases –
> Alabama law effectively requires a petitioner to
> preserve any federal constitutional error by**

> objection at trial, and to pursue that assertion of
> error on direct appeal, if the error is capable of
> being raised at those times. *See Ala.R.Crim.P.*
> 32(a)(5) (barring collateral review of issues not so
> raised); *Cain v. State*, 712 So.2d 1110, 1112 (Ala. Cr.
> App. 1997); *Horsley v. State*, 675 So.2d 908, 909
> (Ala. Cr. App. 1996); *Brown v. State*, 663 So.2d 1028,
> 1030 (Ala. Cr. App. 1995). Claims that may be raised
> in direct proceedings and are not raised there are
> accordingly unexhausted and later procedurally
> barred from federal habeas corpus review. *See
> Magwood v. Smith*, 791 F.2d 1438, 1444 (11th Cir.
> 1986) (interpreting Alabama procedural rules). **Here,
> every subclaim is barred for failure to raise it on
> direct appeal.**

As in *Kennedy*, petitioner has failed to raise any issues on direct appeal. Respondents concede that petitioner raised claims X, XV and XVIII in the trial court. Petitioner claims he also raised claims XVI, VIII and XVI in the trial court. To the extent that the claims were raised in the trial court, petitioner abandoned these claims by not raising them on direct appeal as required under Alabama law. Petitioner's claim of ineffective assistance of appellate counsel, claim V, is procedurally barred due to petitioner's failure to raise it on state collateral review by means of a Rule 32 petition.

Claims II through IX, XI through XVI, XVIII, XIX, XXI and XXII are procedurally barred from federal review due to petitioner's failure to raise them properly in state court. "When a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." *See Wilson v. Jones*, 902 F.2d 923, 925 (11th Cir. 1990), *reh. denied*, 927 F.2d 615 (11th Cir. 1991), *citing Bennett v. Fortner*, 863

F.2d 804, 806 (11th Cir.), *cert. denied*, 490 U.S. 1071, 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989); *see also Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).[10/]

      Petitioner argues that the cause for his default found on direct appeal is the failure of the Alabama appellate courts to appoint counsel or obtain a valid waiver concerning the right to appellate counsel. It is clear from the record that stand-by counsel remained available as counsel on appeal. It is further clear that petitioner did not wish to appeal. He specifically asked the trial judge to tell stand-by counsel "that they can't do nothing without my written [instruction]." (Tab #61, R-293). The decision to appeal rests with the defendant. *Roe v. Flores-Ortega*, ___ U.S. ___, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000). "A defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* Likewise, as here, where one has waived counsel and has specifically instructed stand-by counsel not to file an appeal, (see discussion of claim I below) petitioner cannot complain that he was not appointed appellate counsel.

      Petitioner also argues that certain types of errors are "structural" in their nature and are always harmful and always satisfy the requirement of prejudice for purposes of procedural default. The Supreme Court has "declined to make the application of the procedural default rule dependent on the magnitude of the constitutional claim at issue." *Teague v. Lane*, 489 U.S. at 308, *citing Engle v. Isaac*, 456 U.S. at 129.

      Petitioner also argues that the failure to address these claims would constitute a fundamental miscarriage of justice given the facts and circumstances of the instant case. In the capital sentencing context, a fundamental miscarriage of justice occurs only when the defendant is

---

[10/] Because it appears that the state appellate courts actually ruled on the merits of the claims raised in claims I, X, XVII and XX, the court will address those claims as well as claim XXIII.

actually innocent of the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To demonstrate actual innocence, the petitioner "must show by clear and convincing evidence that but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id*. at 335. In *Dugger v. Adams*, 489 U.S. 401, 410 n.6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), the Supreme Court stated "Demonstrating that an error is by its nature the kind of error than might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received." Petitioner has not even attempted to meet this burden under *Sawyer v. Whitley, supra,* other than to point to the facts in support of the constitutional claims raised–none of which actually contain clear and convincing evidence that would meet petitioner's burden.

With respect to all claims except claims V, XIII, XVIII, and XXII petitioner argues that the Alabama appellate courts reviewed petitioner's case for plain error and that all claims fell within the plain error review. The Alabama appellate courts were required under the *Alabama Rules of Appellate Procedure*, R 45A, to review the record for plain error. In *Julius v. Johnson*, 840 F.2d 1533, 1546 (11th Cir.) *cert. denied,* 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988), the Eleventh Circuit Court of Appeals explicitly held:

> [t]he mere existence of a "plain error" rule does not preclude a finding of procedural default; moreover, the assertion by an Alabama court that it did not find any errors upon its independent review of the record does not constitute a ruling on the merits of claims not raised in that court or in any court below. Unless there is some indication that the state court was aware of this issue, we cannot say that the court rejected the merits of petitioner's constitutional claim. A contrary rule would encourage the "sandbagging" of state courts criticized in *Wainwright v. Sykes*, 433 U.S. 72,

> 97 S.Ct. 2497, 53 L.Ed.2d 954 (1977). *See Murray v.*
> *Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2647, 91
> L.Ed.2d 397 (1986) (possibility of "sandbagging"
> exists on appeal "since appellate counsel might well
> conclude that the best strategy is to select a few
> promising claims for airing on appeal, while reserving
> others for federal habeas review should the appeal be
> unsuccessful.")

*Tarver v. Hopper*, 169 F.3d 710, 713 (11th Cir.), *reh. den.*, 181 F.3d 111 (11th Cir. 1999); *Weeks v.*

*Jones*, 26 F.3d 1030, 1045 (11th Cir. 1994), 36 F.3d 96 (11th Cir. 1994), *cert. denied,* 513 U.S. 1193

(1995). The mere fact that petitioner's case was reviewed by the state appellate courts will not

prevent this court from finding some or all of the claims are procedurally defaulted.

Claims that petitioner contends were decided on the
merits by the state appellate courts on plain error
<u>review but which this court finds were not so decided</u>

Nelson also argues that claims III, IV, VII, VIII, IX, XII, XIX, and XXII were

actually addressed and decided on the merits by the Alabama appellate courts on plain error review.

In support of claim III, the structural ineffectiveness of counsel, petitioner alleges that "the structural

defect that permeated the petitioner's entire case was trial counsels' lack of knowledge concerning

their role at the petitioner's sentencing hearing and the trial court's statements which further

confused that role." In support of claim IV, the claim of ineffective assistance of stand-by counsel,

petitioner argues that stand-by counsel failed to conduct any meaningful investigation, failed to

discover available mitigating evidence, and did nothing to protect petitioner's statutory and

constitutional rights. Petitioner also states that counsel implicitly consented to an arrangement

whereby they would say nothing unless petitioner lost his voice. Petitioner argues that claims III

and IV were addressed by the Court of Criminal Appeals when it stated:

> The trial court appointed stand-by counsel to assist the appellant, and they were present during all the proceedings and did on occasion confer with the appellant at his request.

681 So.2d at 255 n.6.  There is no indication from the opinion that the appellate court considered the specific issues raised as claims III and IV.  *See Julius v. Johnson*, 840 F.2d at 1546 ("unless there is some indication that the state court was aware of this issue, we cannot say that the court rejected the merits of petitioner's constitutional claim.")

In support of claim VII, petitioner alleges that he was denied a fair hearing because the trial court refused to reconsider his guilt as a mitigating factor.  The Court of Criminal Appeals stated:

> A second sentencing hearing was held before the trial court on February 16, 1994, and the court, finding the existence of the aggravating circumstance . . . finding no mitigating circumstances, sentenced the appellant to death. . . . We hold that a competent defendant can waive the presentation of mitigating evidence at a capital sentencing proceeding, provided the trial court carefully weighs possible statutory and nonstatutory mitigating circumstances against the aggravating circumstances to assure that death is the appropriate sentence. . . . The appellant was not only competent to represent himself in the proceeding, but he was also competent to waive the presentation of mitigating circumstances.

681 So.2d at 255-256.

On return from remand the Court of Criminal Appeals stated:

> . . . [T]he trial court made specific findings concerning the existence or nonexistence of aggravating and mitigating circumstances. . . . The return also shows that the trial court considered the evidence presented during the sentencing phases of the trial; weighed the aggravating and mitigating circumstances as required by § 13A-5-47(e);

14

> considered the advisory verdict of the jury;
> considered the presentence report; and, finding the
> existence of two aggravating circumstances while
> noting the absence of any mitigating circumstances,
> resentenced the appellant to death. . . . After the
> hearing, the trial court entered specific written
> findings concerning the existence or nonexistence of
> each aggravating circumstance enumerated in § 13A-
> 5-49, and the existence or nonexistence of any
> mitigating circumstance enumerated in § 13A-5-51,
> and any mitigating circumstance found to exist under
> § 13A-5-52. . . . It [the trial court] found no mitigating
> circumstances. . . .  We conclude that the sentencing
> findings and conclusions of the trial court are
> supported by the evidence.

681 So.2d at 258-59.

The Alabama Supreme Court stated:

> We agree with the trial court that there were two
> aggravating circumstances and no mitigating
> circumstances.

681 So.2d at 262.

Because doubts about guilt or innocence are not "mitigating factors," *Franklin v. Lynaugh*, 487 U.S.

164, 172, 108 S.Ct. 2320, 2327, 101 L.Ed.2d 155 (1988); *McMillian v. State*, 594 So.2d 1253, 1271-

72 (Ala. Cr. App. 1991), the appellate courts' references to the trial court's findings and their own

findings of no mitigating factors would not have included consideration of claim VII which

petitioner attempts to raise here.

In support of claim VIII petitioner alleges that because the jury was informed that

petitioner's convictions were "facts" he was denied the right to present mitigating evidence by

challenging the weight of the  evidence against him with respect to the charged offense and the

aggravating factor relied upon by the state in seeking the death penalty.  In other words, he was not

15

allowed to re-litigate the issue of his guilt or innocence of the underlying crime or the 1974 murder

conviction which was used as an aggravating factor.

      In support of claim IX, petitioner alleges that during jury selection the trial court

informed the jury that the jury that unconstitutionally sentenced petitioner to death in 1982 had

returned a verdict of death.  Petitioner cited to Tab #48, R-125.[11]

---

[11]      A review of the transcript reveals that the following transpired during petitioner's opening argument to the jury:

DEFENDANT:  Members of the jury, this is an unusual case.  If it was a guilt or innocence you were to decide I would see you different.  But, as Mr. Russell has said, you are only here to set punishment.  I hope it's just punishment.  I hope you make a just decision.  I'm not here because I asked to be here.  Two juries before you have heard this same allegations and testimony you will hear, and they voted for a just sentence.  Mr. Russell said they voted, told you they voted for a verdict of guilty.  But they also voted for justice on the sentencing.  Two juries before you have.

THE COURT:  Did you say that, Mr. Russell?

MR. RUSSELL:  I don't think I did.  I think I just told them this jury had convicted him.  I have no objection to what he wants to say.

THE COURT:  But, I do.  This jury is independent of any jury and it will be up to this jury to decide for itself.  <u>Of course, I didn't hear you say somebody voted for death</u>, but that's –

DEFENDANT:  No, your Honor, I said they voted for justice in that case.  That's what I said.  I hadn't said the sentence yet, but the decision they reached.

But two juries before them have heard the same testimony that they will hear, and in my opinion they have made a just verdict and sentence – guilt and sentence – according to the evidence they heard or testimony they heard.

I'm not here because I asked to be.  That's why I am representing myself today.  The reason I am here is because af[ter] those two juries heard this case and set the just punishment before, I've had some lawyers raise the issue that was frivolous and they persuaded some liberal, soft-hearted judges to grant this hearing over my objection.

<u>We've got lawyer and judges and lawmakers in this country and they have voices to get laws like this death penalty enacted.  But when it comes down to after juries like yourselves have set that punishment, they sorta' crawfish on it.  They don't have the guts to allow justice to prevail.</u>

<u>You have an opportunity today to decide a just sentence and allow justice to prevail.  The same as those two juries before you did.</u>  I trust that after you hear the testimony you will make a just decision, as those two juries before you did, and intended that justice be served.  Thank you.

16

In support of claim XII petitioner alleges that the trial court's instructions to the jury on the issue of aggravating circumstances, mitigating circumstances and reasonable doubt were constitutionally inadequate in the following respects:

(1)     the trial court informed the jury that it could consider the petitioner's 1974 murder conviction as an aggravating factor when this crime was already included in the indictment in the instant case;

(2)     the trial court informed the jury that "Your verdict, whatever it is must be unanimous" (Section 13A-5-47(f) of the Alabama Code requires that a vote for life imprisonment without parole requires the vote of a majority of the jurors.);

(3)     the trial court's instruction concerning burdens of proof was vague and misleading and resulted in reducing the State's burden of proof;

(4)     the trial court's instruction on reasonable doubt was vague, confusing, and reduced the State's burden of proof: "reasonable doubt and to a moral certainty," "doubt in your mind for which you can give a reason," "doubt based upon reason and which is reasonable in view of all the evidence," "doubt that is based upon sound and sensible reason;"

(5)     the trial court's instruction regarding evidence in mitigation and mitigating circumstances was inadequate including trial court's failure to provide any instruction concerning intoxication.

---

(Tab #48, R-124-27).

Contrary to petitioner's assertion, the trial court did not inform the jury that the previous juries had sentenced petitioner to death. Petitioner's opening speech to the jury was much more likely to have resulted in the jury guessing the recommendation of the previous juries. Further, in petitioner's closing speech he stated "you can insure that justice prevails in this case with a unanimous vote for the death sentence." (Tab #53, R-253).

17

In arguing that the Alabama appellate courts actually addressed claims VIII, IX and

XII, petitioner relies on the following portion of the opinion of the Alabama Court of Criminal

Appeals:

> After the appellant's conviction for the capital offense
> with which he was charged, a separate sentence
> hearing was held before the jury in accordance with
> §§ 13A-5-45 and -46.   After hearing evidence
> concerning aggravating and mitigating circumstances;
> **after being properly instructed by the trial court
> as to the applicable law; and after being correctly
> advised as to its function in finding aggravating
> and mitigating circumstances**, in weighing those
> circumstances, if appropriate, and its responsibility in
> reference to the return of an advisory verdict, the jury
> returned a unanimous verdict recommending a
> punishment of death. (emphasis added).

681 So.2d at 259.  There is no indication from the opinion that the appellate court considered the

specific issues raised as claims VIII, IX, and XII.  *See Julius v. Johnson*, 840 F.2d at 1546 ("unless

there is some indication that the state court was aware of this issue, we cannot say that the court

rejected the merits of petitioner's constitutional claim.")

Petitioner also argues that the Alabama appellate courts actually addressed claim

XIX.  In support of this claim petitioner alleges he was denied his right to a fair sentencing hearing

because the jury was death qualified, the jury included members who had been victims of crime, one

juror was the relative of a murder victim, the members of the jury heard the experiences of the

prospective members of the jury concerning crime, the jury included six jurors who stated that they

would be more inclined to impose death if the defendant had been convicted of more than one

murder, one juror knew District Attorney David Barber socially.  The Alabama Court of Criminal

Appeals stated only "We find no evidence that the sentence was imposed under the influence of

passion, prejudice or any other arbitrary factor."  681 So.2d at 259.  The Alabama Supreme Court

18

stated: "[W]e conclude that no passion, prejudice or other arbitrary factor influenced the imposition of the death penalty. In fact, Nelson himself asked the jury to simply follow the law and to sentence him to death." 681 So.2d at 262. Because petitioner refused to participate in the appellate process, the appellate courts had no guidance from petitioner concerning the specific facts that he alleges constituted "passion, prejudice or other arbitrary factor." That being the case, this court cannot say that the appellate courts addressed the specific claim raised as claim XIX here.

Petitioner argues that claim XXII was addressed by the Alabama appellate courts. In support of claim XXII, that petitioner's right to have his death penalty case reviewed on a complete and accurate record, petitioner complains that the record does not contain: a transcript or order concerning petitioner's waiver of counsel or the trial court's appointment of standby counsel; transcripts of a hearing that occurred on the Friday before the petitioner's sentencing trial; the fifty-six cards of the jury pool; the written motion to recuse filed by stand-by counsel at the sentencing hearing; the trial court's initial questioning and organization of the jury pool; the transcript of the polling of the jury as to its sentence. He further complains that the phrase "inaudible" or "no audible response" appears in the transcript during portions of the sentencing hearing. Petitioner states that this claim was addressed and decided on the merits by the Alabama appellate courts. He cites to the opinion of the Alabama Court of Criminal Appeals in which that court stated prior to remand:

> The responsibilities and procedures set out in our statutes and rules pertaining to the death penalty are not to be suspended simply because an accused invites or seeks the death penalty. A defendant cannot be executed in this state unless his guilt and the propriety of his sentence have been established. In order to properly review a capital case to determine if death is the appropriate penalty, we must have a meaningful record from the trial court. In order to provide such a record, the trial court must conduct a full and fair sentencing hearing in accordance with the

> appropriate statutes and enter complete written
> findings as to the aggravating and mitigating
> circumstances.

681 So.2d at 256.

He further relies on the opinion of the Alabama Supreme Court in which the court stated:

> The Court of Criminal Appeals reviewed the case and
> remanded it to the trial court for another sentencing
> hearing because the trial court had not ordered,
> received, and considered a pre-sentence report, as
> required by § 13A-5-47(b); had not entered specific
> written findings concerning the existence or
> nonexistence of each aggravating circumstance
> enumerated in § 13A-5-49, each mitigating
> circumstance enumerated in § 13A-5-51, and any
> additional mitigating circumstance offered pursuant
> to § 13A-5-52; and had not entered specific written
> findings of fact summarizing the crime committed by
> the appellant and his participation in it. See the Court
> of Criminal Appeals opinion of August 18, 1995, 681
> So.2d 252. On remand, the trial court complied with
> the directions of the Court of Criminal Appeals and
> reimposed the conviction and death sentence.

681 So.2d at 261.

There is no indication that either of the appellate courts considered any of the specific alleged deficiencies raised in claim XXII; therefore, this court cannot say that the appellate courts considered and rejected this claim.

Finally, with respect to claims VI, XVIII and XXII, petitioner argues that there was a *sua sponte* obligation on the part of the appellate courts to grant appellate counsel or to determine if there was an adequate waiver, to conduct an independent weighing of the aggravating and mitigating facts, and to ensure that the appellate review of petitioner's case was based on a meaningful review. As previously noted and as further discussed below, petitioner's stand-by trial counsel remained counsel on appeal, therefore, there was no obligation for the appellate courts to

appoint appellate counsel. To the extent that petitioner alleges that the appellate court's weighing

of aggravating and mitigating factors improperly included the finding of an aggravating factor for

which no evidence was presented, it was petitioner's responsibility to argue to the appellate courts

that there was no evidence of the challenged aggravating factor presented.[12] The Alabama Court of

Criminal Appeals had previously held:

> After hearing evidence during the sentencing-phase
> hearing concerning aggravating and mitigating
> circumstances; after being properly instructed by the
> trial court as to the applicable law; and after being
> correctly advised that if the mitigating circumstances
> outweighed the aggravating circumstances, the
> punishment would be life imprisonment without the
> benefit of parole, but that if the aggravating
> circumstances outweighed the mitigating
> circumstances, the punishment could be death; the
> jury returned a unanimous verdict fixing Nelson's
> punishment at death.
>
> Thereafter, the trial court held another hearing to aid
> it in determining whether or not it would sentence
> appellant to death as recommended by the jury or to
> life imprisonment without the possibility of parole. In
> its findings of fact (see "Appendix" attached hereto
> and made a part of this opinion), the trial court found
> the existence of the following aggravating
> circumstances: Nelson was previously convicted of
> murder in the second degree, a felony involving the
> use or threat of violence to the person, in the Circuit
> Court of Jefferson County, on August 28, 1974, said
> conviction being within twenty years preceding the
> commission of the offense giving rise to the instant
> case (this aggravating circumstance is encompassed
> within the capital offense alleged in the indictment),
> and the capital felony was committed while Nelson
> was engaged in the commission of the crime of
> robbery. § § 13-11-2(a)(13); -6(2); and -6(4). The

---

[12]    The aggravating factor that petitioner alleges was found without evidence being presented was the factor that
the murder was committed while petitioner was engaged in a robbery.

trial court found from the evidence that on January 1, 1978, Nelson intentionally, maliciously, and with premeditation shot and killed Thompson after having been convicted of a prior murder in the second degree on August 28, 1974. It further found from the evidence that the purpose of enticing Thompson to his trailer in Kimberly was to obtain his automobile and other personal property for the purpose of leaving the state after killing Cash some five hours earlier. The trial court examined the evidence for mitigating circumstances, and particularly examined it in the light of the mitigating circumstances set out in § 13-11-7, and found that no mitigating circumstances existed.

Thus, the trial court found the existence of two aggravating circumstances and no mitigating circumstances. It considered the aggravating circumstances, while noting the absence of mitigating circumstances, and, finding the aggravating circumstances sufficient to support the sentence of death recommended by the jury, sentenced Nelson to death.

We find that the findings and conclusions of the trial court are amply supported by the evidence in this case. There is no question as to the proof of the prior conviction of murder. The prior conviction was not in issue at the trial and was admitted. The evidence strongly supports the conclusion reached by the trial court that the present crime was committed while Nelson was engaged in the commission of the crime of robbery. We concur in the findings of the jury and the trial court that death is the appropriate sentence in this case. If one believes the testimony of Vice, as the jury obviously did, Nelson executed Thompson in a cold and calculated manner. Furthermore, the natural inference to be drawn from the evidence as a whole is that Nelson killed Thompson in order to obtain his automobile to flee and, thus, avoid detection and prosecution for his crime. Among the evidence overwhelmingly tending to support Vice's testimony, the location of Vice's leg wound, blood and a lady's earring on the floor beside the bed, the scalp wound

> on Thompson's head, and type A blood found on
> Nelson's clothing strongly corroborate her testimony.

*Nelson v. State*, 511 So.2d 225, 244-245 (Ala. Cr. App. 1986).

This finding was not disturbed in petitioner's first federal habeas petition. While the underlying robbery was not presented to the jury, the court is unaware of any case law that would prevent the judge from considering an aggravating factor not considered by the jury.

Finally, with respect to all of these claims in which petitioner relies on a *sua sponte* obligation by the appellate courts to take some action, the court is unaware of any case law that excuses a procedural default based on a state court's *sua sponte* obligation to take some action.

Having concluded that claims II through IX, XI through XVI, XVIII, XIX, XXI and XXII are procedurally barred from federal review, the court will now address the remaining claims–claims I, X, XVII, XX and XXIII.

I.    Denial of right to counsel based on a lack of record that the trial court ever <u>conducted an adequate hearing concerning petitioner's waiver of counsel.</u>

Although petitioner did not provide any issues or facts to the state appellate courts for review, the state courts were required to review the record for plain error pursuant to *Alabama Rules of Appellate Procedure,* Rule 45A. Based on the opinions of the state appellate courts, there is "some indication that the state court was aware of this issue [claim I]." *See Julius v. Johnson*, 840 F.2d 1546. This court, therefore, cannot conclude that this claim is procedurally barred. In *Nelson v. State*, 681 So.2d 252, 255-6 (Ala. Cr. App. 1995), the Alabama Court of Criminal Appeals stated in a footnote:

> From the time of the Temp. Rule 20 proceedings
> referred to above until the present, the appellant has
> acted as his own counsel. A hearing was held in the
> trial court to determine whether the appellant

23

intelligently and knowingly waived his right to court-
appointed counsel, and the court entered its order on
December 1, 1987, finding that the appellant had
intelligently and knowingly waived his right to
counsel during post-conviction matters pertaining to
his case. The Alabama Supreme Court affirmed this
order on December 15, 1987, holding that counsel
was not to be appointed for the prosecution of the
appeal. *Ex Parte Nelson*, 532 So.2d 660 (ala. 1987).
We have examined the record pertaining to the
appellant's waiver of counsel and find that the
appellant's waiver of counsel and decision to
represent himself were knowingly and intelligently
made.    The record in this regard meets the
requirements of *Teske v. State*, 507 So.2d 569 (Ala.
Cr. App. 1987), and *Gillespie v. State*, 644 So.2d
1284 (Ala. Cr. App.), *cert. denied,* 644 So.2d 1284
(Ala. 1994). See also *Faretta v. California*, 422 U.S.
806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).   The
appellant has a constitutional right to represent
himself, and he was and is clearly competent to do so.
The trial court appointed standby counsel to assist the
appellant, and they were present during all the
proceedings and did on occasion confer with the
appellant at his request.

The court concluded in the text of the opinion that "[t]he appellant was not only competent to

represent himself in the proceedings, but he was also competent to waive the presentation of

mitigation circumstances." 681 So.2d at 256.

In *Nelson v. State*, 681 So.2d 260, 261 (Ala. 1996) the Alabama Supreme Court

incorrectly stated historical facts concerning this case when it stated:

On May 17, 1994, Nelson filed with the Court of
Criminal Appeals a motion seeking to waive appellate
review of his conviction and to have his execution
date set by this court.  On September 2, 1994, the
Court of Criminal Appeals, without an opinion, asked
the trial court to determine whether Nelson had
properly waived his right to be represented by counsel
at prior hearings. In response, the trial court said that
Nelson had properly waived it, and the trial court

24

> returned the case to the Court of Criminal Appeals,
> which by an opinion of October 21, 1994, 668 So.2d
> 933, transmitted the case to this Court for the setting
> of an execution date.

The Alabama Court of Criminal Appeals actually ordered "that this cause be and the same is hereby remanded to the trial court for a hearing to determine whether the appellant wishes to voluntarily and knowingly waive his right to appellate review." (Tab #65). The trial court conducted a hearing on September 19, 1994 on the issue of whether petitioner knowingly and voluntarily waived his right to appellate review. (Tab #62).

On September 27, 1994 the court entered the following order:

> On September 19, 1994 a hearing was held by this
> Court to determine whether the defendant, David
> Larry Nelson, wishes to voluntarily and knowingly
> waive his right to appellate review. The transcript of
> said hearing is hereby fully incorporated and made a
> part of this order as though fully set out herein.
>
> Pursuant to the order of the Alabama Court of
> Criminal Appeals to this Court on remand for the
> aforementioned hearing, this Court finds as follows:
>
> 1. That the appellant, David Larry Nelson, has
> participated in these proceedings for more
> than ten (10) years as a petition writer and
> oral movant.
>
> 2. That in appellant's oral recitations before this
> Court, as well as his written petitions to this
> Court, it is clearly exhibited that appellant is
> well versed in the substantive law as well as
> the procedural law of Alabama.
>
> 3. This Court in its memorandum opinion of
> December 1, 1987 found that the appellant,
> David Larry Nelson, intelligently and
> knowingly waived his right to counsel during
> future post convictions matters in this cause.

4.     That the appellant appeared before this Court at this hearing and it is obvious from his pronouncement and demeanor that this appellant, David Larry Nelson, is fully aware of his actions and makes his decision from an informed position.

Again while this Court may not agree with David Larry Nelson, I find that his waiver is made voluntarily and knowingly.

(See Respondents' Exhibit, Vol. 1, pp.41-42).

On August 18, 1995, on remand, the Court of Criminal Appeals stated:

Pursuant to our instructions, the trial court held the hearing and, on September 27, 1994, entered its order finding that the appellant intelligently and knowingly waived his right to appellate review.  After the trial court filed a return to remand, we dismissed the appeal on the appellant's motion on October 21, 1994, and transmitted the case to the Alabama Supreme Court for the setting of an execution date.  Because there can be no waiver of appellate review in a case in which the death penalty has been imposed, the remand of this case to the trial court to determine if the appellant intelligently and knowingly waived his right to appeal and the subsequent dismissal of the appeal and transmittal of this case to the Alabama Supreme Court for the setting of an execution date were inappropriate.

681 So.2d at 256.

While the Alabama Supreme Court incorrectly stated the historical facts concerning petitioner's attempted waiver of his right to appellate review, that court's mis-statement is inconsequential it did not relate to a holding or independent finding by the Supreme Court on petitioner's waiver of counsel.

Although the trial court apparently did not conduct a new *Faretta* hearing prior to the 1994 re-sentencing hearings, it is clear from the record that a hearing was held in 1987 to determine

26

whether petitioner intelligently and knowingly waived his right to court-appointed counsel.  (681 So.2d at 255, n.6; Respondents' Exhibit, Vol. 1, p.41).

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) the United States Supreme Court held that a criminal defendant has a constitutional right to represent himself at trial when he knowingly, voluntarily and intelligently elects to do so. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, *citing Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

In *Fitzpatrick v. Wainwright*, 800 F.2d 1057 (11th Cir. 1986), the court recognized that "while a waiver hearing expressly addressing the disadvantages of a *pro se* defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but, rather, the defendant's understanding." *Fitzpatrick*, 800 F.2d at 1065. The court stated that in determining whether a waiver is knowingly and intelligently made the court must look at the particular facts of the case including the background, experience and conduct of the accused. Among the background factors to be considered are defendant's age and educational background. This is not evident from the record before the court. The court must also consider whether the defendant is represented by counsel before trial. Petitioner was represented by counsel at both the 1978 and the 1982 trials. The court should also consider petitioner's knowledge of the nature of the charges and the possible penalty to which he was subject, if convicted. Petitioner was sentenced to death following both trials so there is no doubt that petitioner was aware of the possible penalty he was subject to.  Another factor to be considered is whether petitioner understood he would be

27

required to comply with the rules of procedure at trial.  Prior to the resentencing, the court told

petitioner:

| | |
|---|---|
| THE COURT: | You are lawyer of record in this case as I understand, are you not?  You will have a chance to talk to that jury. ... |
| DEFENDANT: | I would also like to make summation and closing arguments to Your Honor, you know, if it's all right with you. |
| THE COURT: | You're the lawyer.  You will be able to do whatever a lawyer does. |
| DEFENDANT: | If I get out of line and you tell me – I ain't no lawyer – |
| THE COURT: | I will rule the same way I rule with other lawyers.  Probably we may do it a little more lenient since you aren't schooled in the law as these other two lawyers on the side of you.  But, we will do everything in our power to be sure it is a fair and equitable trial according to the rules of the State of Alabama and the United States of America. |
| MR. CALDWELL: | He is acting as his own counsel and I just wanted to know what capacity – |
| THE COURT; | You are stand-by counsel in case he needs to confer with somebody. |
| DEFENDANT: | I don't necessarily need them to say anything unless I lose my voice. |
| THE COURT: | We'll give you a chance to decide that.  They will just be sitting there in case you, at some time, change your mind. |

(Tab #45, R-12-14).

A review of the re-sentencing transcript as a whole reveals that petitioner understood

court procedure and knew how to handle himself in court.  Petitioner participated in voir dire,

questioned witnesses, made objections and made a closing argument.

Another factor to be considered is whether the waiver was a result of coercion or mistreatment of petitioner. There is absolutely no evidence that his decision was a result of coercion or mistreatment.

The Eleventh Circuit also stated that whether the petitioner had knowledge of possible defenses he might raise could be considered. In petitioner's case, since the proceeding was not a trial but re-sentencing, what would be relevant would be petitioner's knowledge of relevant mitigating circumstances he could raise in opposition to the prosecutor's request for the death sentence. Petitioner, however, obstinately maintained, contrary to the mandate of the Court of Appeals for the Eleventh Circuit, that he should receive a new guilt phase as well as a sentencing phase. (Tab #50, R-229-30). His examination of Linda Vice was clearly an attempt to blame the murder on Vice. When given the opportunity, petitioner refused to identify any mitigating circumstances and, further, argued that the law demanded that the jury return a verdict for the death sentence. (Tab #53, R-251-54).

Another factor that is important is whether petitioner was attempting to manipulate the proceedings since such evidence would imply a greater understanding of the risks and complexities of a criminal trial. A reading of the re-sentencing transcripts clearly reveals an attempt by petitioner to manipulate the proceedings. This is evident in his insistence of a new guilt phase when only re-sentencing was ordered, his insistence on trying to prove Vice, who was not on trial, guilty of murder, his refusal to provide any mitigating circumstances and his demand that he be sentenced to death.

The court has also considered the fact that petitioner had participated in his criminal trial and had represented himself in a Rule 20 proceeding. Further, stand-by counsel was appointed to advise petitioner if he requested; however, he seldom requested help.

29

In light of the 1987 finding by the state court that petitioner was competent to represent himself in the Rule 20 proceeding and, further, in light of petitioner's failure to challenge the 1987 waiver combined with the factors set out above, the court concludes that petitioner sufficiently understood the disadvantages of representing himself. Thus, even without a *Faretta* hearing before his re-sentencing, the court is satisfied that this is one of those rare cases where a *Faretta* hearing is not necessary. The court emphasizes that petitioner received a *Faretta* hearing in 1987 which he has not challenged. The court is unaware of any precedent which requires that a new *Faretta* hearing be conducted merely because of the passage of time.

Further, in petitioner's previous habeas petition, CV 90-PT-2653-S, the court noted that petitioner and the state elected to forego a direct appeal of the denial of the Rule 20 petition in favor of submitting a habeas petition in this court and further elected to forego presentation of additional testimony or evidence except on one issue. (Tab #97, pp.9-12). This election was memorialized in a joint stipulation which also provided for a mental examination of petitioner to ensure that he was competent to waive additional development of the record and that such a decision was made free of intimidation or coercion. (Tab #97, p. 12, n.3). This court further noted that petitioner was an active participant in his defense. (Tab #97, pp.13, n.4; 71, 82). In fact, in both of his trials, petitioner examined two critical witnesses, Linda Vice, the eyewitness, and Paul Couch, the deputy who interviewed him. Petitioner also argued to the jury in both the guilty phase and the punishment phase. (Tab #97, p.13, n.4). The trial court implicitly had to have found petitioner competent to actively participate in his trial.

The Rule 20 court held a hearing in 1987 to determine whether petitioner intelligently and knowingly waived his right to court-appointed counsel and determined that he did. Sometime in1990 or 1991, petitioner was examined to ensure that he was competent to reach the decision to

waive additional development of the record.  In 1994 the trial court conducted a colloquy with

petitioner and determined that his waiver of appellate review was voluntary and knowing.[13]

Further, in his re-sentencing hearing, petitioner clearly expressed his desire to

represent himself and assume the role of chief counsel in his case.  He repeatedly rejected the need

for stand-by counsel stating: "I don't necessarily need them to say anything unless I lose my voice."

(Tab #45, R-14).  (See also, Tab #49, R-164, 202).  ("I've asked the lawyers only to advise me when

I've asked for their advice;" "I told them to start with ... that unless I lost my voice to just advise

me.").[14] At the end of re-sentencing, when advised that stand-by counsel would remain as stand-by

counsel for purposes of the automatic appeal, petitioner was concerned that stand-by counsel might

appeal without his permission:

> THE COURT:    You have got an automatic appeal as the law requires.
>
> MR. NELSON:    What about my stand-by attorneys?  I don't want no appeal.
> I want to go straight to the Supreme Court.
>
> THE COURT:    You said you didn't want the stand-by counsel.  But they will
> consult with you in the jail from time to time until dismissed
> by this Court or the Court of Criminal Appeals or the
> Supreme Court of this State to take whatever action is

---

[13]    The fact that the Court of Criminal Appeals later determined that appellate review was mandated does not affect whether the attempted waiver was knowing and voluntary.

[14]    In *Martinez v. Court of Appeals of California, 4th Appellate District*, ___ U.S. ___, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), the court reiterated the role of stand-by counsel:

> [S]tand-by counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as the participation does not "seriously undermin[e] the "appearance before the jury" that the defendant is representing himself.

120 S.Ct. at 691, *citing McKaskle v. Wiggins*, 465 U.S. 168, 167, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).  It is apparent from reading the re-sentencing transcripts that petitioner had his own strategy or plan of course of action.  It is equally apparent that stand-by counsel did not figure into that plan.  Had counsel attempted to actively participate in the sentencing the court has no doubt that stand-by counsel's actions would have undermined the appearance that defendant was representing himself.

|              |                                                                                                                   |
|--------------|-------------------------------------------------------------------------------------------------------------------|
|              | necessary and proper under the laws of this State and under the mandate from the Bar Association of your conduct in such cases, do you understand that?  You are the lawyer. |
| MR. NELSON:  | What I wanted to know is are you going to leave them on there as stand-by counsel? |
| THE COURT:   | I just told you that. |
| MR. NELSON:  | Have you explained – |
| THE COURT:   | Take this man away. |
| MR. NELSON:  | That they can't do nothing without my written – |
| THE COURT:   | I have told them that.  That's in my order back in '87 when I declared you to be your own lawyer. |

(Tab #61, R-291-93).

During the hearing on petitioner's waiver of appellate review, the following exchange occurred

between petitioner and the court that indicated his continuing competency to represent himself:

|              |                                                                                                                   |
|--------------|-------------------------------------------------------------------------------------------------------------------|
| THE COURT:   | ... I want to know if you understand what you are doing. |
| MR. NELSON:  | I fully understand it. |
| THE COURT:   | You have participated as your own lawyer and this Court has ruled previously that you do understand the process and you know what you are doing so far as this Court is concerned.  It's not for me to decide which is the wiser course.  But whether or not you have the, whether you are making the intelligent – not whether the decision is intelligent, but whether or not you, in making that decision, understand the process of what is taking place.  I find that you do. |
| MR. NELSON:  | I would agree that someone in this situation might not see it as an intelligent and wise decision. |
| THE COURT:   | It isn't whether the decision, whether the final decision is wise and intelligent, but whether or not you know what you are doing when you waive your rights. |

32

| | |
|---|---|
| MR. NELSON: | I assure you that it is knowing, competent, and a voluntary decision I have made and I would appreciate it if you would rule that. |
| THE COURT: | I've ruled. |
| MR. NELSON: | I wish to continue to act as my own attorney. |
| THE COURT: | So far as I'm concerned, I've made that ruling before, and I find no reason to change it.  It will be up to the Court of Criminal Appeals to decide that, and I guess the Supreme Court to decide it. |
| MR. NELSON: | I didn't ask for them to send it back up here, you know.  I would like to get it over with and get on back and get it over with as soon as possible. |

(Tab #62, R-10-12).[15]

It is apparently undisputed that petitioner had a hearing in 1987 prior to first waiving counsel and was also examined by mental professionals sometime after 1990 or 1991 to ensure that he was competent to waive additional development of his first federal habeas record and that the decision was made free of intimidation or coercion.  Further, petitioner repeatedly stated in his 1994 sentencing proceedings that he did not want stand-by counsel to do anything without his specific request.

The court is satisfied based on the historical facts as well as a review of the resentencing proceedings that petitioner knowingly, voluntarily and intelligently chose to represent himself at his resentencing.  This claim is without merit.

---

[15]     Although there is no constitutional right for a criminal defendant to proceed *pro se* on direct appeal, the states may nevertheless allow self-representation.  *See Martinez v. Court of Criminal Appeal of California, Fourth Appellate District*, ___ U.S. ___, 120 S.Ct. 684, 145 L.Ed.2d 597, 68 U.S.L.W. 4040 (2000).

X.     Petitioner sentenced to death based upon an aggravating factor not established
       at his sentencing hearing and the double counting of another aggravating factor.

Although this claim was not raised on appeal or in a Rule 32 proceeding, the claim

was addressed by the Alabama appellate courts.  The Alabama Court of Criminal Appeals stated:

> In its findings of fact, the trial court found the
> existence of two aggravating circumstances: The
> defendant was previously convicted of another capital
> offense or a felony involving the use or threat of
> violence to the person; and [t]he capital offense was
> committed while the defendant was engaged or was
> an accomplice in the commission of, or an attempt to
> commit, or flight after committing, or attempting to
> commit ... robbery.  Section 13A-5-49(2) and (4). ...
> We conclude that the sentencing findings and
> conclusions of the trial court are supported by the
> evidence...    After considering the aggravating
> circumstances and noting the complete absence of
> mitigating circumstances, we are convinced that death
> is appropriate for this appellant.  681 So.2d 259-60.

681 So.2d at 259-60.

The Alabama Supreme Court stated:

> We agree with the trial court that there were two
> aggravating circumstances and no mitigating
> circumstances.  The two aggravating circumstances
> were (1) [t]he defendant was previously convicted of
> another capital offense or felony involving the use or
> threat of violence to the person; and [t]he capital
> offense was engaged or was an accomplice in the
> commission of, or an attempt to commit, or flight
> after committing, or attempting to commit [a]
> robbery.    Section 13A-5-49(2) and (4).    Our
> independent weighing of the aggravating
> circumstances, considering the absence of any
> mitigating circumstances, indicates that death is the
> proper sentence in this case. ...  Furthermore, we have
> also reviewed the aggravating circumstances and
> considered the absence of mitigating circumstances,
> pursuant to *Alabama Code* 1975, Section 13A-5-49,

34

> Section 13A-5-51 and Section 13A-5-52. We
> conclude that the trial court did not err in sentencing
> Nelson to death and that the Court of Criminal
> Appeals did not err in affirming the sentence.

681 So.2d at 262.

The aggravating circumstance that the crime was committed in order that petitioner could convert

the victim's automobile to his own use was not presented to the jury. Although the prosecutor

originally stated he was relying on both of the above-aggravating factors (Tab #45, R-22-23), he

later stated he would probably leave out as an aggravating factor that petitioner committed the

murder in order that he could take the victim's car. (Tab #45, R-26). Subsequently, the prosecutor

stated that he was "dropping" this aggravating factor. (Tab #45, R-27). The jury recommended

death based solely on the aggravating factor that petitioner previously had been convicted of murder

within the past twenty years. At the October 23, 1995 resentencing, the judge originally stated he

was sentencing petitioner to death based on both aggravating factors. (Tab #63, R-16-20). After

petitioner's objection, the judge stated that he was sentencing petitioner to death based only on

petitioner's prior conviction. (Tab #63, R-35-36). Nevertheless, when he made written findings of

the aggravating factors, he relied on both aggravating factors. (Tab #63A, pp. 84-85). The court

is unaware of any case law that prevents the judge from considering an aggravating factor not

considered by the advisory jury. Further, the record clearly indicates that the trial judge agreed with

the jury that even one of the aggravating factors, in the absence of any mitigating factors, was

sufficient to justify petitioner's death sentence. The fact that the judge found two aggravating

factors does not violate the Constitution.

   To the extent that petitioner challenges the aggravating factor of a prior murder

conviction as double counting based on the fact that the prior murder conviction was alleged in the

indictment to make petitioner's case a capital case, "the fact that the aggravating circumstance duplicated one of the elements of the crime does not violate the Constitution. *See Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Ex parte Windsor*, 683 So.2d 1042, 1060, *reh. denied*, (1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

XVII.  Denial of Fair Appellate Review on a Meaningful Record

      In support of this claim petitioner alleges that he was denied his right to a fair appellate review when the appellate courts did not require the trial court to make written findings summarizing the crime and petitioner's participation in it even though such findings are required by Alabama law.

      Although petitioner quotes heavily from the opinions of the appellate courts, he failed to quote the portion of the opinion of the Alabama Court of Criminal Appeals which states:

> Although the formal sentencing order does not contain written findings of the trial court summarizing the crime and the appellant's participation in it, the transcript of the sentencing hearing contains such findings, which were read into the record by the trial court in open court. Although we interpret the statute to mandate that such specific order, we nevertheless find that, under the rare circumstances presented in this case, the findings of fact and the findings in reference to the appellant's participation in the crime that were dictated into the record meet the requirements of § 13A-5-47(d) and provide us with a "meaningful record" upon which to review the appellant's sentence.
>
> Because we have a meaningful record before us, we will not remand this case to the trial court for it to amend its order because to do so would not benefit

36

the appellant and it would further unnecessarily delay
these proceedings.

681 So.2d at 258.

At the October 23, 1995 resentencing the trial court clearly summarized the crime

and plaintiff's participation in it:

THE COURT:   It is my understanding from what this Court has found out
during the limited time it has been involved in this, and this
offense allegedly occurred January 1, 1978, after midnight
and in the early morning within the jurisdiction of this Court
in Jefferson County.

. . .

It is alleged that one Linda Vice, they went to Theo's Grill
which was on the corner of 4th Avenue and 19th Street.

. . .

They met Wilson Thompson there and they drove him to a
trailer park out in Kimberly.

. . .

And there was some discussion, allegedly at the trial, there
was purported to have been some discussion about a sex orgy.

. . .

Mr. Thompson went to the bathroom, allegedly, and took off
his clothes in preparation for what he thought would be a sex
orgy –

. . .

He came out and told Linda to take her clothes off and she
wouldn't. And Nelson then told her to take her clothes off
and lay down.

. . .

37

> And Mr. Thompson attempted to have oral sex with Linda and Nelson shot him. Then he later shot Linda Vice in the wrist and in the leg and she faked that she was dead.
>
> There was further presented at the trial that as a result of the bullet entering Thompson's back and passing through his spine near the chin, that was the cause of his death, and the coroner and forensic expert testified that amount of gunpowder around the wound is a good indication that the shot was probably fired within inches of the skin. And the whole purpose of getting Thompson out there really was to rob him.

(Tab #63, R-30-34).

The Alabama Court of Criminal Appeals and the Alabama Supreme Court had a copy of the October 23, 1995 resentencing transcript and the Alabama Court of Criminal Appeals clearly reviewed the transcript in determining that the court's findings at the hearing satisfied § 13A-5-47(d) and provided the courts with a "meaningful record" upon which to review petitioner's sentence. The mere fact that the findings by the trial court were not written does not implicate any federal rights. This claim is factually without merit.

XX.    Excessive and Disproportionate Sentence

In support of this claim petitioner alleges that the sentence of death was disproportionate to and excessive as compared to the sentences received in similar cases. The Alabama Court of Criminal Appeals held: "considering the crime and this appellant, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases."   681 So.2d at 260. The Alabama Supreme Court addressed this issue as follows:

> The third question is whether the sentence in this case "is excessive or disproportionate to the penalty imposed in similar cases." *See Jenkins v. State*, 627 So.2d 1034 (Ala. Crim. App. 1992), *aff'd*, 627 So.2d 1054 (Ala. 1993); *Ex Parte Ford*, 515 So.2d 48 (Ala. 1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1061,

38

> 98 L.Ed.2d 1023 (1988); *Morrison v. State*, 500 So.2d
> 36 (Ala. Crim. App. 1985), *aff'd*, 500 So.2d 57 (Ala.
> 1986), *cert. denied,* 481 U.S. 1007, 107 S.Ct. 1634,
> 95 L.Ed.2d 207 (1987); *Neelley v. State*, 494 So.2d
> 669 (Ala. Crim. App. 1985), *aff'd*, 494 So.2d 697
> (Ala. 1986), *cert. denied,* 480 U.S. 926, 107 S.Ct.
> 1389, 94 L.Ed.2d 702 (1987); *Giles v. State*, 632
> So.2d 568 (Ala. Crim. App. 1992), *aff'd*, 632 So.2d
> 577 (Ala. 1993), *cert. denied,* ____ U.S. ___, 114
> S.Ct. 2694, 129 L.Ed.2d 825 (1994). After reviewing
> these cases, we have determined that Nelson's
> sentence is not excessive or disproportionate.

681 So.2d at 262.

Petitioner alleges no facts in support of claim XX, his claim that his sentence was excessive and disproportionate, and he makes no attempt to distinguish his case from the cases cited by the Alabama Supreme Court. Although plaintiff argues that sufficient facts have been alleged to satisfy the notice pleading requirement of 28 U.S.C. § 2254, the Supreme Court has recognized that "'[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75, n.7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), *quoting* Advisory Committee Note to Rule 4, *Rules Governing Habeas Cases. See also, Spaziano v. Singletary*, 36 F.3d 1028, 1031 n.2 (11th Cir. 1994), *cert. denied,* 513 U.S. 1115 (1995).

## XXIII. Cumulative Effect

Having considered the merits of claims I, X, XVII, and XX and found them to be meritless and having determined that the remaining claims are procedurally defaulted the court likewise finds this claim to be without merit.

Based on the foregoing, the petition for writ of habeas corpus is due to be denied.

A separate final judgment consistent with this memorandum opinion will be filed simultaneously

herewith.

DONE this the ⟋⟍ day of July, 2000.

ROBERT B. PROPST
UNITED STATES DISTRICT JUDGE